UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

ALLY K. UELMAN,

Plaintiff,

v. Case No.: 26-cv-1738

GEORGIA-PACIFIC CONSUMER PRODUCTS LP;
GEORGIA-PACIFIC CORRUGATED LLC;
KOCH INDUSTRIES INC;
MINDY SHEIKH,

Defendants.

---

**COMPLAINT**

---

The Plaintiff, Ally K. Uelman, alleges through her undersigned counsel, as follows:

**NATURE OF CASE**

1. Plaintiff Ally K. Uelman ("Plaintiff" or "Uelman") sues Defendants, Koch Industries Inc ("Koch"), Georgia-Pacific Consumer Products LP and Georgia-Pacific Corrugated LLC (together "Georgia-Pacific"), and Mindy Sheikh ("Sheikh"), under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et. seq.* ("FMLA"), to redress unlawful employment practices of Koch, Georgia-Pacific, and Sheikh, when they interfered with Uelman's exercise of her FMLA rights and retaliated against Uelman for exercising her rights under the FMLA, by terminating her employment. Koch and Georgia-Pacific also discriminated against Uelman by terminating her employment because of her pregnancy and request for maternity leave, in violation of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"). Koch and Georgia-Pacific violated the Pregnant Workers

Fairness Act of 2023, 42 U.S.C. §2000gg *et seq.* ("PWFA"), when they retaliated against Uelman for exercising her right to a reasonable accommodation for her pregnancy-related condition, and for failing to continue to provide the reasonable accommodation initially granted, by terminating her employment.

## JURISDICTION AND VENUE

2. Jurisdiction over Plaintiff's claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and the Pregnant Workers Fairness Act of 2023, 42 U.S.C. §2000gg *et seq.*, is conferred on this Court by 28 U.S.C. § 1331.

3. The Eastern District of Wisconsin is the proper federal venue for this action, pursuant to 28 U.S.C. §1391, in that Defendants, Georgia-Pacific, as subsidiaries of Koch, operate the facility in which Uelman was employed in the Eastern District of Wisconsin; Defendant Sheikh resides and works in the Eastern District of Wisconsin.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have occurred.

## JURY DEMAND

5. Plaintiff demands that this case be tried before a jury of her peers.

## PARTIES

6. Plaintiff, Ally K. Uelman, is an adult residing at 8041 S. Chase Road, Pulaski, WI 54162.

7. Defendant, Koch Industries Inc is a corporation organized under the laws of the state of Delaware, with its principal office located at 4111 East 37th Street North, Wichita, KS 67220.

8. Defendant, Georgia-Pacific Consumer Products, LP, is a Limited Partnership, organized under the laws of the State of Delaware, with its principal office located at 133 Peachtree Street, Atlanta, GA 30303, and a Koch subsidiary.

9. Defendant, Georgia-Pacific Corrugated, LLC, is a limited liability company, organized under the laws of the State of Delaware, with its principal office located at 133 Peachtree Street, Atlanta, GA 30303 and a Koch subsidiary.

10. Defendant Mindy Sheikh is an adult residing at 330 Wagon Wheel Court, Green Bay, WI 54302.

## OPERATIVE FACTS

11. Uelman commenced employment with Defendants, Georgia-Pacific, on June 19, 2023, as a temporary employee, working full-time at Georgia-Pacific's facility located at 1919 S. Broadway, Green Bay, WI 54304.

12. On November 6, 2023, Uelman accepted a permanent position with Georgia-Pacific as a Customer Solutions Specialist, Supply Chain-Consultant.

13. As an employee of Georgia-Pacific, a Koch subsidiary, Uelman was jointly employed by Koch.

14. Uelman reported to Mindy Sheikh, Customer Solutions Manager.

15. Uelman received thirteen positive "performance call outs" during her one-on-one meetings with Sheikh in 2024.

16. Prior to her termination, Uelman did not receive any disciplinary measures during her employment with Georgia-Pacific.

17. From February 2024, through October 2024, Uelman had high production numbers.

18. For most of 2024, Uelman also assumed the additional responsibility of training and mentoring new hires.

19. Uelman was the only member of her team to assume this additional job duty.

20. For most of the months between February 2024 and October 2024, Uelman had higher production numbers than the other members of her team, even though she had assumed more responsibilities than other Customer Solutions Specialists.

21. Uelman learned that she was pregnant on June 13, 2024.

22. Uelman informed Sheikh that she was pregnant on or around June 15, 2024.

23. On or around July 1, 2024, Uelman requested intermittent FMLA leave for prenatal care and other pregnancy-related medical appointments.

24. On or around July 20, 2024, Uelman learned that she had a pregnancy-related condition, hyperemesis gravidarum, that causes severe nausea and vomiting, which can lead to weight loss, dehydration, and other health issues.

25. The nausea and vomiting caused by hyperemesis gravidarum are more severe than morning sickness.

26. On or around July 20, 2024, Uelman informed Sheikh that she had hyperemesis gravidarum.

27. On or around July 31, 2024, Uelman's request for intermittent FMLA leave for prenatal care and other pregnancy-related medical appointments was approved, for the time period of June 28, 2024, through December 31, 2024.

28. Uelman used her intermittent FMLA leave on August 5, 2024, August 27, 2024, and August 28, 2024.

29. On September 4, 2024, Brian Dobbins, M.D., Obstetrics and Gynecology ("Dobbins"), wrote a note requesting that Uelman be permitted "to work remotely from home as needed when not feeling well due to medical reasons related to pregnancy."

30. On September 4, 2024, Uelman gave Dobbins' note to Sheikh.

31. At all times relevant in 2024, Sedgwick Claims Management Services ("Sedgwick") handled Georgia-Pacific's employee FMLA requests.

32. On September 4, 2024, Uelman informed Sedgwick representative, James Davenport ("Davenport"), of her pregnancy-related medical condition when she wrote, "[my manager] is submitting a doctor[']s note on my behalf. The note is asking to please allow me to work remotely when ill due to medical reasons related to pregnancy. I have Hyperemesis gravidarum. It is a pregnancy complication that causes severe nausea and vomiting, which can lead to weight loss, dehydration, and other health issues. It's considered more severe than morning sickness, which is typically mild nausea and vomiting."

33. On September 11, 2024, Kelly Malloy, M.D., Obstetrics and Gynecology, completed the FMLA Health Care Provider Certification for Employee's Own Condition ("FMLA Certification").

34. On September 12, 2024, Uelman's request for intermittent FMLA leave, permitting her to work from home, or to miss work, due to her pregnancy-related illness, was

approved for one eight-hour work period per week, for the time period of June 28, 2024 through December 31, 2024.

35. On October 9, 2024, Uelman requested information from Sheikh about the process for requesting maternity leave.

36. Uelman used intermittent FMLA leave for absences due to her pregnancy-related illness on September 17, 2024, October 23, 2024, and November 5, 2024.

37. Uelman's one-year performance evaluation, accompanied by a pay increase, should have been administered on November 6, 2024.

38. On November 18, 2024, Uelman used her FMLA leave to miss one day of work, due to her pregnancy-related illness.

39. In a November 21, 2024 email, Sheikh complained about Uelman's "schedule changes" to Kari Rusch ("Rusch"), Senior Manager-Customer Solution-Supply Chain, and to Cindy Van Rite ("Van Rite"), Senior Director-Supply Chain & Customer Logistics.

40. In the November 21, 2024, email, Sheikh included a chart with a list of nine dates on which Uelman had missed work.

41. Seven of the nine dates listed in the chart were days on which Uelman had used her intermittent FMLA leave.

42. On November 27, 2024, Sheikh told Uelman that she would conduct Uelman's performance review after she received peer feedback.

43. Uelman never received her performance review or pay raise.

44. On November 25, 2024, Uelman used her intermittent FMLA leave for both a medical appointment and because of her pregnancy-related illness.

45. On November 25, 2024, Uelman learned that she had gestational diabetes.

46. On November 25, 2024, Uelman informed Sheikh that she had been diagnosed with gestational diabetes.

47. Uelman used intermittent FMLA leave to attend medical appointments on November 26, 2024, and on December 3, 2024.

48. In a November 27, 2024, email to Sheikh, Uelman provided doctor's notes from her medical providers to document her November 25, 2024, and November 26, 2024, medical appointments.

49. In the November 27, 2024, email, Uelman informed Sheikh that she had future medical appointments scheduled for December 3, 2024, December 12, 2024, and December 23, 2024.

50. On December 2, 2024, Sheikh told Uelman to change her timecard entry for November 29, 2024, the day after Thanksgiving, from "company holiday" to a "personal vacation day."

51. After Uelman changed her timecard, she discovered that the Georgia-Pacific holiday schedule listed the day after Thanksgiving as a paid company holiday.

52. Only after Uelman pointed out that the day after Thanksgiving was a paid company holiday did Sheikh change Uelman's timecard to reflect this fact.

53. On December 5, 2024, Uelman used a day of intermittent FMLA leave for a pre-natal care appointment and, because she was severely nauseated, used a full day of intermittent FMLA leave.

54. On December 6, 2024, Uelman was terminated.

55. Uelman was informed of her termination on a telephone call with Sheikh and a Human Resources Manager.

56. Uelman was told that she had been terminated for "performance issues."

57. Uelman never received a termination letter.

**FIRST COUNT**
**AGAINST ALL DEFENDANTS**
**FAMILY AND MEDICAL LEAVE ACT INTERFERENCE**
**29 U.S.C. § 2615(a)(1)**

58. As and for a first Count, Uelman reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

59. The birth of a child is a "qualifying event" under the Family and Medical Leave Act. 29 U.S.C. § 2601(b)(2).

60. Uelman worked full-time for Georgia-Pacific on a continuous basis for more than twelve months before she made her request for unpaid maternity leave.

61. Koch, Georgia-Pacific, and Sheikh deprived Uelman of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1), on the basis that she was eligible for FMLA's protections, Georgia-Pacific was covered by the FMLA, Uelman was entitled to leave under the FMLA, she provided sufficient notice of her intent to take a maternity leave, and Defendants denied her FMLA benefits to which she was entitled by terminating her employment.

62. Uelman's termination prevented her from using FMLA leave for her maternity leave.

63. Uelman's termination also prevented her from using future intermittent FMLA leave, including the medical appointments scheduled for December 12, 2024, and December 23, 2024, of which she had given notice to Sheikh.

64. Uelman's termination also prevented her from using the intermittent FMLA leave which she would have been eligible to use in 2025, as needed, for medical appointments and illness due to her pregnancy-related condition prior to the delivery of her child.

65. The allegations more particularly described above caused Uelman to suffer and to continue to suffer loss of employment, loss of income, and expenses, all to her damage.

**SECOND COUNT**
**AGAINST ALL DEFENDANTS**
**FAMILY AND MEDICAL LEAVE ACT RETALIATION**
**29 U.S.C. § 2615(a)(2)**

66. As and for a second Count, Uelman reasserts the allegations recited above in paragraphs 1-57 and fully incorporates those paragraphs herein by reference.

67. Koch, Georgia-Pacific, and Sheikh violated 29 U.S.C. § 2615(a)(2) by taking the materially adverse action of terminating Uelman because of her activities protected by the FMLA.

68. The allegations more particularly described above regarding the intentional discriminatory practices of Koch, Georgia-Pacific, and Sheikh were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family Medical Leave Act of 1993, [29 U.S.C. § 2601, *et. seq.*].

69. The allegations more particularly described above caused Uelman to suffer and to continue to suffer loss of employment, wage loss and expenses, all to her damage.

**THIRD COUNT**
**AGAINST KOCH AND GEORGIA-PACIFIC**
**PREGNANCY DISCRIMINATION ACT OF 1978**
**DISCRIMINATORY DISCHARGE**
**42 U.S.C. § 2000e(k)**

70. As and for a third Count, Uelman re-asserts the allegations recited in paragraphs 1-57 and fully incorporates those paragraphs herein by reference.

71. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 prohibits discrimination on the basis of sex.

72. The Pregnancy Discrimination Act of 1978 amended Title VII to prohibit discrimination based on pregnancy.

73. At all times material, Uelman was a pregnant woman entitled to the protections of Title VII and the Pregnancy Discrimination Act.

74. At all times material, Kock and Georgia-Pacific had actual and/or constructive knowledge of Uelman's pregnancy.

75. Koch and Georgia-Pacific took a materially adverse action against Uelman by terminating her employment while she was pregnant.

76. Defendants treated Plaintiff less favorably than similarly situated employees who were not pregnant, who belonged to Uelman's Customer Solutions Specialist team.

77. At all times material, Uelman's pregnancy status was the motivating and determinative factor in Koch's and Georgia-Pacific's decision to terminate Uelman's employment.

78. The allegations more particularly described above caused Uelman to suffer and continue to suffer loss of employment, loss of income, and expenses, all to her damage.

**FOURTH COUNT**
**AGAINST KOCH AND GEORGIA-PACIFIC**
**PREGNANT WORKERS FAIRNESS ACT**
**FAILURE TO ACCOMMODATE**
**42 U.S.C. § 2000gg—1 (1)**

79. As and for a fourth Count, Uelman re-asserts the allegations recited above in paragraphs 1-57 and fully incorporates those paragraphs herein by reference.

80. The Pregnant Workers Fairness Act of 2023, 42 U.S.C. § 2000gg—1 (1) ("PWFA"), requires a covered employer to provide a reasonable accommodation to a worker's known limitation related to pregnancy, childbirth, or related medical conditions, unless the accommodation would cause the employer an undue hardship.

81. Uelman was a qualified employee under the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg(6)(A-C).

82. Uelman was a member of a protected class under the PWFA due to her pregnancy-related medical conditions.

83. Koch and Georgia-Pacific were aware of Uelman's pregnancy-related medical condition, Hyperemesis gravidarum, after Uelman informed her supervisor, on or around July 28, 2024, and informed Sedgwick representative, James Davenport, on September 4, 2024.

84. Koch and Georgia-Pacific were aware of Uelman's pregnancy-related medical condition, gestational diabetes, after Uelman informed Sheikh, on or around November 25, 2024.

85. Uelman requested the accommodations of permission for time away from work to attend pre-natal care medical appointments, related to her gestational diabetes, and the accommodation of permission to work from home, or to miss work, on days in which her nausea was severe, due to her hyperemesis gravidarum, a pregnancy-related medical condition.

86. Uelman would have continued to need these reasonable accommodations after December 6, 2024.

87. Koch and Georgia-Pacific refused to continue accommodating Uelman's pregnancy-related medical conditions when they terminated her employment.

88. As a direct result of Koch's and Georgia-Pacific's failure to accommodate Uelman, she suffered and continues to suffer loss of employment, loss of income, and expenses, all to her damage.

**FIFTH COUNT**
**AGAINST KOCH AND GEORGIA-PACIFIC**
**PREGNANT WORKERS FAIRNESS ACT**
**RETALIATORY DISCHARGE**
**42 U.S.C. § 2000gg—1(5)**

89. As and for a fifth Count, Uelman re-asserts the allegations recited above in paragraphs 1-57 and fully incorporates those paragraphs herein by reference.

90. The PWFA prohibits an employer from taking adverse action in the terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitation related to pregnancy, childbirth, or related medical conditions of the employee. 42 U.S.C. § 2000gg—1 (5).

91. Koch and Georgia-Pacific acted in willful and reckless disregard of Uelman's protected rights when it terminated her employment in retaliation for the days of work she missed due to her pregnancy-related conditions.

92. The allegations more particularly described above caused Uelman to suffer and to continue to suffer loss of employment, loss of income, and expenses, all to her damage.

WHEREFORE Plaintiff, Ally Uelman, demands relief as follows:

A. Compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain and distress, mental anguish, and medical expenses;

B. reinstatement or compensation in lieu of reinstatement;

C. liquidated damages equal to the sum of the compensatory damages and monetary losses;

D. judgment against the above-named Defendant awarding Plaintiff punitive damages in an amount deemed sufficient by the trier of fact to punish and deter the Defendant from engaging in such unlawful conduct now and in the future;

E. costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting these claims, together with interest on said fees; and

F. Such other relief as the Court deems just and equitable.

Dated this 23rd day of September, 2026.

*Electronically signed by Richard D. Crane*
Richard D. Crane, Bar No.: 1120763
Alan C. Olson, Bar No.: 1008953
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: RCrane@Employee-Advocates.com
Email: AOlson@Employee-Advocates.com